**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan Wallis,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-21-08132-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Jonathan Wallis's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security disability benefits. (Doc. 16). The appeal is fully briefed (Doc. 16, Doc. 18, Doc. 19), and the Court now rules.

**I.  BACKGROUND**

The issues presented in this appeal are whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff was not disabled from April 1, 2018 to December 22, 2020 and whether the ALJ committed legal error in his analysis. (Doc. 16 at 4; Doc. 15-3 at 15).

**a.  Factual Overview**

Plaintiff was 37 years old on the alleged disability onset date. (Doc. 15-3 at 21). He has a high school education and past relevant work experience as a heavy equipment operator and fast-food worker. (*Id.*) Plaintiff filed his disability insurance benefits (DIB) application on November 5, 2018, alleging disabilities beginning on April 1, 2018,

including obesity, multilevel degenerative disc disease, left ankle impingement syndrome, carpal tunnel syndrome, and hypertension. (*Id.* at 16). Plaintiff also filed an application for supplemental social security income (SSI) on October 15, 2018. (*Id.* at 14). An ALJ denied Plaintiff's claim on December 22, 2020, after a telephonic hearing. (*Id.* at 14–15). The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (*Id.* at 2).

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show he "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if he suffers from a medically determinable physical or mental impairment that prevents him from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1).[1] Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled.

---

[1] The Court notes that the relevant regulations for both DIB and SSI applications are virtually identical. Thus, the Court will only cite to DIB regulations found in 20 C.F.R. Part 404. For reference, parallel SSI regulations are listed in 20 C.F.R. Part 416.

*Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform his "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—he "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Doc. 15-3 at 16).

At the second step, the ALJ determined that Plaintiff's obesity, multilevel degenerative disc disease, and left ankle impingement syndrome constituted severe impairments under 20 C.F.R. § 404.1520(c). (*Id.*) The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.* at 17).

At the third step, the ALJ determined that Plaintiff's impairments did not meet or equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 17–18). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b), "except that [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently." (*Id.* at

18) The ALJ also found that:
> [Plaintiff] can stand and/or walk in combination up to 2 hours daily, as well as sit for 6 hours in an 8-hour workday. [Plaintiff] may seldom (5% or less often) ambulate on rough or uneven surfaces and may use a handheld assistive device when doing so. [Plaintiff] can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] may not operate foot controls with the left lower extremity. [Plaintiff] should avoid concentrated exposure to vibration, extreme cold temperatures/weather, as well as to hazards (e.g., dangerous machinery, unprotected heights). [Plaintiff] may change position briefly between sitting and standing as frequently as every half hour without loss of productivity.

(*Id.*)

At the fourth step, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (*Id.* at 21).

At the fifth step and final step, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy that he can perform. (*Id.* at 22). The ALJ reached this conclusion based on the testimony of vocational expert (VE) Carmella Jennings, who testified that Plaintiff could perform the requirements of a Marker, Order Caller, and Routing Clerk, which are described in the Dictionary of Occupational Titles (DOT), based on the hypotheticals provided by the ALJ regarding Plaintiff's RFC. (Doc. 15-3 at 56–61). Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of both disability benefits and supplemental security income. (*Id.* at 21–22).

## II. LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means … such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).

On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

### III. DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence nor is it free from legal error because the ALJ failed to (1) find Plaintiff disabled based on Listing 1.04; (2) properly weigh the opinion of treating physician, Sarah Knievel, M.D.; and (3) pose hypothetical questions to the VE containing all the limitations contained in Plaintiff's determined RFC. (Doc. 16 at 2). The Court addresses each of Plaintiff's arguments in turn.

#### a. Statutorily Defined Impairments

At step three, the ALJ determined that Plaintiff's back impairment did not meet Section 1.04 (Disorders of the spine) of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 15-3 at 17). Plaintiff argues that the ALJ erroneously concluded that Plaintiff did not present evidence of nerve root compression when evidence of such impairment is present in the record. (Doc. 16 at 6–8).

> Regarding Plaintiff's back impairment at step three, the ALJ found:
> The claimant's back impairment does not meet listing 1.04 because he does not have one of the listed disorders (herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, fact arthritis, or vertebral fracture resulting in a compromise of the nerve root

        or spinal cord) ***in conjunction with*** evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, in connection with the lumbar spine impairment, also a positive straight leg raising test (sitting and supine); or spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or lumber spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 100B2b. In the present case, the claimant has not presented evidence of nerve root compression or other findings, which would satisfy the criteria listing 1.04.

(Doc. 15-3 at 14) (emphasis in original).

     At step three, the ALJ must assess whether the claimant has an impairment or combination of impairments that meets or medically equals an impairment listed in the Appendix to the federal regulations. 20 C.F.R. Part 404, subpart P, Appendix 1. Conditions set forth in the Listing of Impairments are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (noting that the plaintiff bears the burden of proving that an impairment meets or equals the criteria of a listed impairment). However, the ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments" so long as there was an adequate evaluation of the evidence. *Gonzales v.*

*Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

Section 1.04 of the Listing of Impairments requires:
> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 (2017).[2]

Plaintiff points to several pieces of evidence in the record that he contends support a finding of disability under Listing 1.04(A) because they show "lumbosacral spine nerve root" impingement: (1) medical imaging of Plaintiff's spine (Doc. 15-13 at 3); (2) Nurse Practitioners Ms. Tosha Nelson's and Ms. Victoria Rossi's treatment notes (Doc. 15-11 at 35, Doc. 15-12 at 5); (3) positive straight-leg test results (Doc. 15-8 at 108); (4) documented limited range of motion of Plaintiff's back (Doc. 15-11 at 48);[3] (5) extremity weakness (Doc. 15-8 at 78); and (6) sensory loss and numbness (Doc. 15-8 at 78, 111). (Doc. 16 at

---

[2] The Court notes that after Plaintiff filed his applications, Listing 1.04 regarding the evaluation of spinal disorders was eliminated from the Listing of Impairments effective April 2, 2021, and thus relies on an earlier version of the Listing of Impairments for this analysis.

[3] The Court has reviewed the evidence and notes that the evidence Plaintiff cites to for his "documented limited range of motion" in his back is really a treatment note related to his left ankle evaluation and thus does not support his claim. (*See* Doc. 15-11 at 48).

6–7). In response, Defendant argues that Plaintiff failed to show that his impairment met or equaled Listing 1.04(A) because he did not provide ***objective medical evidence*** for each of the specified criteria, including motor loss accompanied by sensory or reflex loss, nor did he articulate a theory for how his condition equaled the elements of Listing 1.04(A). (Doc. 18 at 10–12). In reply, Plaintiff argues both that this Court cannot evaluate whether Plaintiff met the remaining elements of Listing 1.04(A) because he contends the ALJ did not do so, and that objective medical evidence is not required over a claimant's subjective symptom testimony. (Doc. 19 at 6).

Although Plaintiff contends that his condition medically equaled Listing 1.04(A) due to the above listed evidence (Doc. 16 at 6–7), he does not demonstrate, using objective medical evidence, that his condition meets or equals Listing 1.04(A), specifically showing evidence of nerve root compression characterized by all of the following: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; (4) and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 (2017). Contrary to Plaintiff's assertion that his subjective statements to his physicians regarding his pain are sufficient, neither the ALJ nor the Court can substitute Plaintiff's "allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [an] impairment[] to that of a listed impairment." *See* 20 C.F.R. § 404.1529(d)(3). Moreover, while Plaintiff argues that the ALJ failed to address each element of the listing, the Court finds the ALJ's general finding that Plaintiff does not meet the listing because "he does not have one of the listed disorders…in conjunction with" the remaining elements of Listing 1.04 sufficient to show that the ALJ considered whether Plaintiff met each of the listed criteria. Additionally, the ALJ specifically stated that Plaintiff "has not presented evidence of nerve root compression or other findings" to satisfy Listing 1.04(A). (Doc. 15-3 at 4). As discussed above, the Court agrees.

Moreover, the ALJ need not "state why a claimant failed to satisfy every different

section of the listing of impairments" so long as there was an adequate evaluation of the evidence. *Gonzales*, 914 F.2d at 1201. As discussed elsewhere in the ALJ's opinion, during a March 2019 consultative physical exam, Plaintiff "presented with normal gait, with no issues of orthopedic maneuvers," "demonstrated normal 5 out of 5 strength in both his bilateral upper and lower extremities, normal bulk, without atrophy," "normal sensation and normal deep tendon reflexes," "was able to perform fine motor skills without difficulty," and "showed normal range of motion throughout with negative straight leg raise." (Doc. 15-3 at 20) (citing Doc. 15-8 at 138–42).

Accordingly, Plaintiff failed to meet his burden of proving that he met or equaled the criteria of Listing 1.04(A) because he failed to demonstrate that he met each of the criteria required for a finding of disability under Listing 1.04(A). *Kennedy*, 738 F.3d at 1176; *Burch*, 400 F.3d at 683; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 (2017). Given the noticeable absence of evidence of Plaintiff's motor loss accompanied by sensory or reflex loss, the ALJ properly determined that Plaintiff's impairment did not meet or medically equal Listing 1.04(A) based on substantial evidence in the record. *See Burch*, 400 F.3d at 683 (plaintiff bears the burden of proving that an impairment meets or equals the criteria of a listed impairment).

### b. Opinion of Treating Physician Dr. Knievel

Plaintiff argues that the ALJ did not give sufficient justification for rejecting Dr. Sarah Knievel's opinion. (Doc. 16 at 13). Dr. Knievel treated Plaintiff once in September 2018 and again on December 10, 2018, the same date as Dr. Knievel's medical source opinion. (Doc. 15-8 at 76–81, 129–33, 146–49).

Dr. Knievel filled out a medical source statement form identifying Plaintiff's diagnoses, claimed symptoms, and job-related limitations. (*Id.* at 129–33). Dr. Knievel identified Plaintiff's diagnosis as "Lumbar radicular pain," and indicated that Plaintiff has "flare-ups that impact the function of [his] spine," "limitation in Range of Movement [ROM] of the Spine after repetitive use," and "functional loss or functional impairment and or additional limitation of ROM" after repeated use. (Doc. 15-8 at 129).

Dr. Knievel identified contributing factors to Plaintiff's condition as less movement than normal, excess fatigability, pain on movement, and interference with sitting, standing and/or weight bearing. (*Id.*) Dr. Knievel further noted Plaintiff's localized tenderness and pain to palpitation for his spine and his abnormal gait due to his spinal muscle spasms. (*Id.*) In response to a question about Plaintiff's lower extremity symptoms from his radiculopathy in his lumbar spine and extremities, Dr. Knievel identified the following: severe constant pain in Plaintiff's left lower extremity, mild to severe paresthesias and/or dysesthesias and numbness in both lower extremities. (*Id.* at 130).

Regarding Plaintiff's ability to work, Dr. Knievel opined that Plaintiff's pain interferes with attention and concentration "constantly," Plaintiff can sit and stand/walk while maintaining productivity for just two hours per day, Plaintiff needs a 15 minute walk every 15 minutes throughout the workday and the ability to shift between sitting, standing and walking throughout the day at will, including unscheduled breaks. (*Id.* at 130–31). Dr. Knievel further opined that Plaintiff's cane is medically necessary for standing and walking. (*Id.* at 131). Dr. Knievel also indicated that Plaintiff can occasionally lift less than ten pounds, can only stoop and crouch for 10 percent of an eight-hour workday, is likely to be absent from work four times per month, and has significant limitations in doing repetitive reaching, handling, or fingering. (*Id.* at 132). In response to a narrative-form question regarding the objective medical evidence to support her opinion, Dr. Knievel merely states "see chart note." (*Id.*) Plaintiff contends that Dr. Knievel is referring to the treatment notes from the same day the medical source statement was drafted, December 10, 2018. (Doc. 16 at 11). The four-page treatment note contains the following information, as relevant here:

> Introduction: This 37 year old male presents for back pain and neck pain.
> History of Present Illness: Pleasant gentleman with chronic lumbar radicular pain returns. Status post pain after injury in the early 2000s. Failed conservative management previously included opioid and non-opioid.… He sees providers in the Indian health clinic and they were going to fill out his disability paperwork for SSI. MRI with severe stenosis L5-S1.…

> 1. back pain
>    Severity level is 8. The problem is fluctuating. It occurs persistently. Location of pain is lower back. There is no radiation of pain, The patient describes the pain as stabbing. Symptoms are aggravated by bending, lifting and twisting. Symptoms are relieved by laying on his side.

(Doc. 15-8 at 146) (emphasis omitted). Dr. Knievel also noted normal examination findings under "Review of Systems" and "Physical Exam," other than to note Plaintiff's reported depression. (*Id.* at 147–48). Notably, Dr. Knievel's examination does not appear to have included any examination or objective testing of his musculoskeletal systems, including his spine or extremities, during this visit. The treatment note identifies six diagnostic tests ordered since 2017, but the results of those tests are not listed or discussed. (*Id.* at 146–47).

Under "Assessment" Dr. Knievel indicated that Plaintiff has "Cervicalgia" and "Lumbago with sciatica on both his left and right side." Under "Plan" Dr. Knievel noted: "Disability paperwork was filled out, continue diclofenac and tizanidine. Hold on Lyrica if he is afraid of some of the side effects. Follow up in 3-6 months, recommend continue weight loss. We can discuss injection therapy if interested next appointment." (*Id.* at 149).

The ALJ addressed Dr. Knievel's opinion as follows:
> The undersigned finds this opinion is unpersuasive as it is not consistent with the record, nor is it supported by the examinations performed. Here, this opinion indicates the claimant is completely debilitated, but there is no evidence to suggest the claimant needs additional breaks or absences, nor that he is unable to stand or walk for more than 15 minutes. Here, the claimant has shown moderate stenosis and ankle dysfunction, which reasonably limits his ability to stand/walk, but there is no evidence including severe radiculopathy or severe decreased strength that is consistent with such limitations.

(Doc. 15-3 at 20).

The law previously distinguished between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was known as the "treating physician rule." *See Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), as amended on reh'g (Aug. 9,

- 11 -

2001). "In March of 2017, [t]he Social Security Administration amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.*

Furthermore, the ALJ will consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources. *Alonzo*, 2020 WL 1000024, at *3. Contrary to Plaintiff's assertions that the ALJ's "failure to apply all relevant factors is reversible error" (Doc. 16 at 11), under the new regulations, the ALJ must consider and explain how well the medical evidence supports the medical opinion and how consistent the medical opinion is with the record, and may, but is not required to, explain how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. § 404.1520c(b)(3).

"When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion*.*" *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Substantial evidence supports the ALJ's determination that Dr. Knievel's opinion was unsupported by and inconsistent with the objective medical evidence. (Doc. 19-3 at 22–23); *see Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("The ALJ can meet his burden by setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings.") (quotations omitted). The ALJ used the standard set forth at 20 C.F.R. § 404.1520c in evaluating each medical opinion in the record. (Doc. 15-3 at 20).

The ALJ determined Dr. Knievel's opinion was not supported by the medical records, including Dr. Knievel's own progress notes from the day the opinion was issued, nor was it consistent with the other medical evidence in record which indicated Plaintiff demonstrated only "slightly decreased strength" and Plaintiff showed improvement after surgery and physical therapy. (*Id.*); *see Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003) (finding the fact that a treating physician's opinion was not supported by his own treatment notes was a specific and legitimate reason to not credit the opinion). The opinion regarding Plaintiff's capacity and work limitations from Dr. Justin Garrison's consultative examinations support the ALJ's conclusion because as noted by the ALJ, "[u]pon physical examination, the claimant presented with normal gait, with no issues of orthopedic maneuvers," "demonstrated normal 5 out of 5 strength in both his bilateral upper and lower extremities, normal bulk, without atrophy," and "showed normal range of motion throughout with negative straight leg raise." (Doc. 15-3 at 20). Accordingly, this Court finds that the ALJ did not err by rejecting Dr. Knievel's assessment. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted).

### c. Vocational Expert Testimony

Addressing the Plaintiff's RFC, the ALJ found:
> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk in combination up to 2 hours daily, ***as well as sit for 6 hours in an 8-hour workday***. The claimant may seldom (5% or less often) ambulate on rough or uneven surfaces, and may use a handheld assistive device when doing so. The

>claimant can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant may not operate foot controls with the left lower extremity. The claimant should avoid concentrated exposure to vibration, extreme cold temperatures/weather, as well as to hazards (e.g. dangerous machinery, unprotected heights) The claimant may change position briefly between sitting and standing as frequently as every half hour without loss of productivity.

(Doc. 15-3 at 18) (emphasis added).

During the December 2, 2020, hearing before the ALJ, a VE testified as to Plaintiff's potential for future employment. (Doc. 15-3 at 56–61). The ALJ asked the VE a hypothetical question involving a person of Plaintiff's same age, education, and work history. (Doc. 15-3 at 57–58). The ALJ stated that the hypothetical person: may seldom (5% or less often) ambulate on rough or uneven surfaces, and may use a handheld assistive device to do so; may stand and walk in combination up to two hours daily; may occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; may never climb ladders, ropes, or scaffolds; may never operate foot controls with the left, lower extremity; avoid concentrated exposure to vibration, extreme cold temperatures and weather, and hazards, such as dangerous machinery and unprotected heights. (*Id.*) The ALJ asked a second hypothetical, adding "that the individual may change position briefly between sitting and standing as frequently as every half hour without loss of productivity." (*Id.* at 59). Following the questioning, Plaintiff's counsel asked the ALJ whether there were any restrictions on sitting in the hypotheticals. (*Id.*) The ALJ stated "[n]one beyond that which would be typical of light [work]." (*Id.*) Neither of these hypotheticals included a limitation regarding the need to limit sitting to six hours in an 8-hour workday, as was included in the Plaintiff's RFC. (*See* Doc. 15-3 at 18). In light of the limitations contained in the ALJ's hypotheticals, the VE found that the hypothetical person was capable of performing work in the national economy, including occupations such as a Marker, Order Caller, or Routing Clerk. (*Id.* at 58).

After the ALJ was finished asking his hypotheticals to the VE, Plaintiff's attorney asked the VE additional hypotheticals that involved different limitations. (*Id.* at 59–60). As relevant here, Plaintiff's attorney's first hypothetical was identical to the ALJ's first hypothetical, except that it involved a person that is limited to two hours of standing and walking and two hours of sitting. (*Id.*) When faced with these limitations on sitting, the VE testified that the hypothetical person was not capable of performing work in the national economy. (*Id.* at 60).

Plaintiff argues that the ALJ's hypothetical posed to the VE did not include all of Plaintiff's physical limitations, and, thus, the case must be remanded for further consideration or immediate benefits. (Doc. 16 at 15). Indeed, "[h]ypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). If the hypothetical posed to the VE does not include all of Plaintiff's limitations, then the opinion of the VE has no evidentiary value. *Id.* If the opinion of the VE has no evidentiary value, then the case must be remanded for reconsideration. *Id.* at 423. However, if the ALJ does not improperly reject or ignore evidence, then the ALJ is justified in relying on the VE's responses to the hypothetical posed. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Specifically, Plaintiff contends that "the ALJ's hypothetical question contained no limitation as the total duration that Plaintiff is able to sit," while Plaintiff's RFC includes a limitation that Plaintiff can only sit for six hours of an eight-hour workday. (Doc. 16 at 15). The Court notes that Plaintiff's determined RFC does indeed contain the phrase "[t[he claimant can … sit for 6 hours in an 8-hour workday," and the ALJ did not explicitly include it in the hypotheticals posed to the VE. (*See* Doc. 15-3 at 18).

The parties dispute whether the ALJ was required to specify the sitting limitation in view of the Ninth Circuit's holding in *Terry v. Saul*, 998 F.3d 1010 (9th Cir. 2010). In *Terry*, the Ninth Circuit held that it was not error for the ALJ to omit the standing and walking requirement from a hypothetical RFC containing "medium work" limitations

- 15 -

because "an expert in this field is presumptively aware of the agency's well-established definition of this term of art." *Id.* at 1011. The *Terry* Court reasoned that because "medium work" has a well-established meaning outside of the explicit definition in 20 C.F.R. § 404.1567(b), as documented in SSR 83-10 as requiring standing or walking for six hours in an 8-hour workday, the ALJ's use of "medium work" "sufficiently conveyed [the claimant's standing and walking limitations." *Id.* at 1013; Soc. Sec. Admin., *Titles II and XVI: Determining Capability to Do Other Work – The Medical-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251, *6.

According to Plaintiff, *Terry* does not apply because unlike the SSR 83-10 description of "medium work," the definition for "light work" does not specify any particular limitations on sitting. (Doc. 16 at 16). Defendant responds that the ALJ was not required to specify the sitting limitation because "light work" has a well-established meaning in disability law as defined in SSR 83-10, although Defendant fails to inform the Court of what that well-established meaning is. (Doc 18 at 16–17).

The Court disagrees with Defendant that the *Terry* rationale can be applied to this case, because none of the well-established definitions of "light work" include an explicit definition of the amount of sitting required. Indeed, at least one other court has recognized that "light work" has a well-established definition pertaining to the amount of standing and walking required, not sitting. *See Mitzi D. v. Saul*, 2019 WL 8112507, at *2 (C.D. Cal. Dec. 13, 2019) ("Given that SSR 83-10 has been in play for over thirty years, there is no reason to think the VE understood light work to encompass anything other than approximately six hours of standing or walking.").

> Indeed, 20 C.F.R. § 404.1567(b) defines "light work" as work involving:
>> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or ***when it involves sitting most of the time with some pushing and pulling of arm or leg controls***. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. ***If someone***

> ***can do light work, we determine that he or she can also do sedentary work***, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added). Additionally, SSR 83-10 further interprets the regulatory definitions classifying work based on levels of exertion using the categories delineated in § 404.1567. SSR 83-10, 1983 WL 31251, *2. Specifically, SSR 83-10 states that '[e]ach functional level is defined…by the extent of its requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* SSR 83-10 explains that it provides "elaborations" on the definitions in § 404.1567 regarding the activities required to perform each level of work, and "[t]hey may be used by decisionmakers to determine if an individual has the ability to perform the full range of sedentary, light, or medium work from an exertional standpoint." *Id.* at *5. Regarding "light work," SSR 83-10 provides:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs. ***A job is also in this category when it involves sitting most of the time*** but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work… Relatively few unskilled light jobs are performed in a seated position.

*Id.* (emphasis added). SSR 83-10 goes on to state that while "the full range of light work requires standing or walking, on or off, for a total of approximately 6 hours in an 8-hour workday," "[s]itting may occur intermittently during the remaining time." *Id.* at *6.

The Court finds that nowhere in these definitions of "light work" is there a clear statement on the amount of sitting required for this classification. Although SSR 83-10 specifies that some "light work" jobs are those that "involve[] sitting most of the time," there is no support in the record (or elsewhere) that such a definition is consistent with a limitation for sitting only six hours in an 8-hour workday. As such, it is unclear to the Court

that an experienced VE, such as the one in this case, would necessarily know that the definition of "light work" proposed by the ALJ's hypothetical included a six-hour sitting limitation. Moreover, the ALJ's second hypothetical, requiring that Plaintiff be able to "change position briefly between sitting and standing as frequently as every half hour without loss of productivity" also fails to establish a limitation on Plaintiff's ability to sit that the VE could consider in determining whether jobs existed that Plaintiff could reasonably perform while sitting for no more than six hours in a workday.

It follows, then, that the hypothetical to the VE was incomplete, and the ALJ erred in relying upon the VE's testimony to determine that there are occupations existing in significant numbers that Plaintiff could perform. *See generally Terry*, 998 F.3d at 1014 ("the question is whether the ALJ and the expert would have shared an understanding that the term 'medium work' implies a six-hour standing and walking limitation.")

### d. Remand

This Court has discretion to remand the case for further development of the record or for an award of benefits. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (noting that a district court has the discretion to award benefits only when "the record has been fully developed and where further administrative proceedings would serve no useful purpose"). Even assuming that the three elements of the Ninth Circuit's "credit-as-true rule" are satisfied, the doctrine "envisions 'some flexibility.'" *Garrison*, 759 F.3d at 1020 (quoting *Connett*, 340 F.3d at 876). The Ninth Circuit has explained that this flexibility "is properly understood as requiring courts to remand for further proceedings when… an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Considering "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules," the Court finds that "further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103–04 (9th Cir. 2014) (citation omitted). Specifically, the Court finds that the ALJ

needs to propose a hypothetical to the VE that includes all of Plaintiff's limitations, including the six-hour sitting limitation, before the ALJ can properly make a disability determination. On this record, specifically the incomplete VE hypotheticals, the Court finds there is a serious question of whether Plaintiff is actually disabled. Therefore, "remand for further proceedings is warranted… in an exercise of discretion." *Id.* at 1107. Moreover, remand is appropriate to specifically develop the record as to whether suitable work exists in the national economy for someone with Plaintiff's RFC, including all limitations. *See Elgrably v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04760-PHX-JAT, 2018 WL 5264074, at *14 (D. Ariz. Oct. 23, 2018).

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 6th day of July, 2022.

_____
James A. Teilborg
Senior United States District Judge